02:00:03  1                    IN THE UNITED STATES DISTRICT COURT

        2                      FOR THE DISTRICT OF DELAWARE

        3
           UNITED STATES OF AMERICA,       )
        4                                  )
                          Plaintiff,       )
        5                                  ) C.A. No. 19-cr-57-RGA
           v.                              )
        6                                  )
           STEPHEN WILLIAMS,               )
        7                                  )
                          Defendant.       )
        8

        9                    Friday, May 24, 2019
                             2:00 p.m.
       10                    Plea Hearing

       11
                             844 King Street
       12                    Wilmington, Delaware

       13
           BEFORE:  THE HONORABLE RICHARD G. ANDREWS
       14           United States District Court Judge

       15

       16
           APPEARANCES:
       17

       18                UNITED STATES ATTORNEY'S OFFICE
                         BY:  LAURA D. HATCHER, ESQ.
       19
                                 Counsel for the Plaintiffs
       20

       21

       22                LAW OFFICE OF DINA CHAVAR
                         BY:  DINA CHAVAR, ESQ.
       23
                                 Counsel for the Defendant
       24

       25

02:06:11  1                    THE COURT:  All right.  Please be seated.

02:06:13  2                    Ms. Hatcher.

02:06:14  3                    MS. HATCHER:  Good afternoon, Your Honor.  Laura

02:06:16  4     Hatcher on the behalf of the United States.  Now is the time

02:06:18  5     for the hearing in the matter of United States versus

02:06:20  6     Stephen Williams, Criminal Action Number 19-57.  The

02:06:25  7     Defendant is present with his counsel and the government is

02:06:27  8     prepared to proceed.

02:06:28  9                    If we may, Your Honor, I have a signed

02:06:30 10     Memorandum of Plea Agreement with sealed Attachment A and

02:06:33 11     waiver of indictment that I would like to hand up.

02:06:51 12                    THE COURT:  All right.  That will be good.

02:07:01 13                    Okay.  Ms. Chavar and Mr. Williams, can you come

02:07:05 14     forward?

02:07:06 15                    MS. CHAVAR:  Certainly.

02:07:18 16                    THE COURT:  Good afternoon, Mr. Williams.

02:07:21 17                    THE DEFENDANT:  Good afternoon.

02:07:21 18                    THE COURT:  How are you today?

02:07:22 19                    THE DEFENDANT:  I'm well.  How are you?

02:07:24 20                    THE COURT:  Good.

02:07:25 21                    So I understand that you intend to enter a

02:07:27 22     guilty plea pursuant to this Memorandum of Plea Agreement.

02:07:31 23     It's my responsibility to make sure that your plea of guilty

02:07:34 24     is knowing and voluntary.  So I'm going to ask you a series

02:07:38 25     of questions so I can be sure that that is the case.  I'm

02:07:42  1    going to first have you take an oath to answer all of my

02:07:46  2    questions truthfully.  It's important to answer truthfully.

02:07:49  3    If you answer any of the questions falsely, your false

02:07:51  4    answer may later be used against you in a separate

02:07:55  5    prosecution for perjury.

02:07:56  6              Do you understand all that?

02:07:57  7              THE DEFENDANT:  Yes, sir.

02:07:58  8              THE COURT:  Can we administer an oath.

02:08:01  9              (Oath administered to the Defendant and the

02:08:11 10    Defendant affirmed.)

02:08:11 11              THE COURT:  So Mr. Williams, what is your full

02:08:14 12    name?

02:08:15 13              THE DEFENDANT:  Stephen McCale Williams.

02:08:17 14              THE COURT:  Okay.  And what's your date of

02:08:19 15    birth?

02:08:19 16              THE DEFENDANT:  5/29/83.

02:08:22 17              THE COURT:  All right.  So you're thirty-five.

02:08:26 18              THE DEFENDANT:  Yes, I'll be thirty-six

02:08:28 19    Wednesday.

02:08:28 20              THE COURT:  Okay.  How far did you go in school?

02:08:31 21              THE DEFENDANT:  I'm working on my second masters

02:08:33 22    degree as we speak.

02:08:34 23              THE COURT:  Okay.  I take it from what I have

02:08:38 24    heard so far that you speak and understand English?

02:08:41 25              THE DEFENDANT:  Yes, sir.

02:08:42 1            THE COURT:  I have to ask these questions.  So

02:08:46 2    are you having any trouble understanding me so far?

02:08:48 3            THE DEFENDANT:  No, sir.

02:08:49 4            THE COURT:  Have you ever been treated for any

02:08:52 5    mental illness?

02:08:53 6            THE DEFENDANT:  No, sir.

02:08:53 7            THE COURT:  Have you ever been treated for

02:08:56 8    addiction to alcohol or drugs of any kind?

02:08:58 9            THE DEFENDANT:  No, sir.

02:08:59 10           THE COURT:  Are you presently under the

02:09:01 11   influence of any alcohol, medication or drug of any kind?

02:09:04 12           THE DEFENDANT:  No, sir.

02:09:04 13           THE COURT:  Do you understand what's going on

02:09:06 14   today?

02:09:06 15           THE DEFENDANT:  Yes, sir.

02:09:06 16           THE COURT:  Do you have any, Ms. Chavar, do you

02:09:10 17   have any reason to doubt Mr. Williams's competence to

02:09:14 18   proceed?

02:09:14 19           MS. CHAVAR:  No, Your Honor.

02:09:16 20           THE COURT:  So have you, Mr. Williams, received

02:09:18 21   a copy of the Information pending against you in this case?

02:09:25 22   That's the document with the formal written charge.

02:09:28 23           THE DEFENDANT:  Yes, sir.

02:09:29 24           THE COURT:  And have you fully discussed the

02:09:34 25   charge and the case in general with your attorney,

02:09:37  1    **Ms. Chavar?**

02:09:38  2             **THE DEFENDANT:  Yes, sir.**

02:09:39  3             **THE COURT:  Have you had enough time to talk to**

02:09:41  4    **her about anything you want to talk to her about?**

02:09:44  5             **THE DEFENDANT:  Yes, sir.**

02:09:45  6             **THE COURT:  So an Information is different than**

02:09:50  7    **indictment.  You and any defendant have the right to be**

02:09:54  8    **charged by an indictment which is returned by a grand jury.**

02:09:59  9    **A grand jury is a group of citizens who determine that it is**

02:10:03 10    **more probable than not that you committed the crime charged.**

02:10:07 11             **The charges in the Information on the other hand**

02:10:10 12    **are not reviewed by a grand jury, they're simply written up**

02:10:15 13    **by the government's attorney.  So you can waive indictment**

02:10:17 14    **and if you do, then you're giving up your right to have the**

02:10:21 15    **grand jury act as a safeguard against prosecutorial abuse.**

02:10:27 16    **Do you understand all that?**

02:10:27 17             **THE DEFENDANT:  Yes, sir.**

02:10:28 18             **THE COURT:  Have you discussed the waiver of**

02:10:29 19    **indictment with Ms. Chavar?**

02:10:31 20             **THE DEFENDANT:  Yes, sir.**

02:10:31 21             **THE COURT:  Have you also signed a document**

02:10:34 22    **which is two-pages long captioned Waiver of Indictment**

02:10:42 23    **earlier today indicating that you waive indictment?**

02:10:46 24             **THE DEFENDANT:  Yes, sir.**

02:10:46 25             **THE COURT:  Is that, in fact, what you want to**

02:10:48  1    do is to waive indictment?

02:10:49  2                  THE DEFENDANT:  Yes, sir.

02:10:50  3                  THE COURT:  All right.  Nobody is forcing you or

02:10:54  4    made you any promises to cause you to do this; is that

02:10:57  5    right?

02:10:57  6                  THE DEFENDANT:  No, sir.

02:10:58  7                  THE COURT:  Okay.  Well, I'm going to accept the

02:11:03  8    waiver of indictment.  I will hand the original to the clerk

02:11:06  9    for filing.

02:11:07 10                  Are you fully satisfied with the advice given to

02:11:10 11    you by Ms. Chavar?

02:11:11 12                  THE DEFENDANT:  Yes, sir.

02:11:12 13                  THE COURT:  So I have also been handed this

02:11:14 14    written Memorandum of Plea Agreement which on the seventh

02:11:19 15    page has signatures in blue ink of the prosecutor and

02:11:23 16    Ms. Chavar.

02:11:25 17                  Did you also sign this earlier today?

02:11:27 18                  THE DEFENDANT:  Yes, sir.

02:11:27 19                  THE COURT:  And before you signed it, did you

02:11:30 20    read the whole thing?

02:11:31 21                  THE DEFENDANT:  Yes, sir.

02:11:32 22                  THE COURT:  Did you discuss it with Ms. Chavar?

02:11:36 23                  THE DEFENDANT:  Yes, sir.

02:11:37 24                  THE COURT:  Do you think you understand what

02:11:39 25    your agreement with the government is?

02:11:40  1              THE DEFENDANT:  I do.

02:11:41  2              THE COURT:  And when you were talking with

02:11:42  3    Ms. Chavar about it, if there were any parts that were

02:11:49  4    unclear or that you just wanted more explanation about, did

02:11:53  5    you tell her about them?

02:11:54  6              THE DEFENDANT:  Yes, sir.

02:11:55  7              THE COURT:  And she then provided explanation?

02:11:57  8              THE DEFENDANT:  Yes, sir.

02:11:57  9              THE COURT:  So you understand the agreement

02:12:04 10    between you and the government is exactly what's written

02:12:07 11    down in this agreement, nothing less and nothing more?

02:12:09 12              THE DEFENDANT:  Yes, sir.

02:12:10 13              THE COURT:  All right.  So I'm going to ask the

02:12:12 14    prosecutor to summarize the essential terms of the plea

02:12:17 15    agreement.  I'm going to ask you after she's done whether

02:12:20 16    she said anything that is different than your understanding

02:12:23 17    of what your agreement is.  So let's do that.

02:12:34 18              Ms. Hatcher, what are the essential terms of the

02:12:36 19    plea agreement?

02:12:37 20              MS. HATCHER:  Yes, Your Honor.

02:12:38 21              Paragraph 1, the Defendant agrees to waive

02:12:40 22    indictment and enter a voluntary plea of guilty to one count

02:12:43 23    of an information charging him with threat or bribery

02:12:47 24    concerning programs receiving federal funds, in violation of

02:12:50 25    18 USC Section 666(a)(2).

02:12:53  1          Paragraph 2.   The Defendant understands that the

02:12:54  2  charge against him carries the following maximum statutory

02:12:59  3  penalties:   Ten years of imprisonment; a $100 special

02:13:03  4  assessment; three years of supervised release; restitution;

02:13:06  5  and a fine of twice the gross monetary loss to the victim.

02:13:10  6          In paragraph 3, the Defendant understands that

02:13:12  7  if we were to proceed to trial, the government would have to

02:13:15  8  prove beyond a reasonable doubt the following elements of

02:13:17  9  the offense, that there was a Person 1 who was an agent of

02:13:20 10  the University A; University A received federal benefits in

02:13:23 11  excess of $10,000 in a one-year period; Defendant gave a

02:13:29 12  thing of value, here cash payment, to Person 1; Defendant

02:13:31 13  acted corruptly with the intent to influence Person 1 with

02:13:35 14  respect to a transaction or series of transactions

02:13:38 15  concerning University A; the value of the transaction or

02:13:41 16  series to transactions to which payment was related was at

02:13:44 17  least $5,000.  And he knowingly, voluntarily, and

02:13:44 18  intelligently admits his guilt to each of the above

02:13:49 19  described elements.

02:13:49 20          In paragraph 4, the Defendant admits he's

02:13:52 21  pleading guilty because he is, in fact, guilty.

02:13:54 22          In paragraph 5, the parties have stipulated and

02:13:57 23  agreed the loss amount to the victim is between 1.5 and $3.5

02:14:01 24  million.

02:14:01 25          In paragraph 6, the United States agrees that in

02:14:03  1    consideration of Defendant's guilty plea, it will not oppose

02:14:07  2    a two-level reduction in the Offense Level related to the

02:14:12  3    sentencing guidelines, or a three-level reduction if it

02:14:15  4    turns out the sentences guidelines are 16 or greater.

02:14:20  5            In paragraph 7, the Defendant understands that

02:14:22  6    the Court will sentence him in accordance with the

02:14:24  7    sentencing factors set forth in 18 USC, Section 3553(a), and

02:14:27  8    he understands that the sentencing will be left up to the

02:14:31  9    Judge who may impose a sentence that exceeds, falls below,

02:14:34 10    or is contained within the guidelines.  And that if that

02:14:37 11    sentence is different than that what which the Defendant

02:14:39 12    expects, that is not a reason to withdraw his guilty plea.

02:14:42 13            Paragraph 8, the United States retains the right

02:14:45 14    to make whatever recommendation at the time of sentencing

02:14:47 15    that it believes are appropriate.

02:14:49 16            Paragraph 9, incorporates Attachment A and any

02:14:52 17    terms thereto which are filed under seal to the Court and

02:14:55 18    the parties agree to be bound by those terms.

02:14:58 19            Paragraphs 10 and 11 and subparts relate to

02:15:01 20    forfeiture and restitution and the Defendant's obligations

02:15:04 21    to comply with forfeiture requirements and financial

02:15:09 22    disclosure.

02:15:10 23            In paragraph 12, the Defendant agrees to waive

02:15:14 24    constitutional and statutory challenges pending forfeiture.

02:15:19 25            In paragraph 13, the Defendant voluntarily and

02:15:23  1   expressly waives the right to file an appeal, collateral

02:15:27  2   attack or other writ or position after sentencing including

02:15:30  3   but not limited to an appeal under 18 USC, Section 3742, or

02:15:37  4   28 USC, Section 1291, or a motion under 28 USC, Section

02:15:39  5   2255.  Notwithstanding the foregoing, the Defendant reserves

02:15:43  6   his right to file an appeal for ineffective assistance of

02:15:46  7   counsel or to appeal if the government appeals, or if the

02:15:50  8   Defendant's sentence exceeds that set forth in the maximum

02:15:54  9   sentencing penalties or reasonably exceeds the sentencing

02:15:56 10   guidelines.

02:15:57 11           In paragraph 14, the Defendant agrees to pay a

02:16:00 12   special assessment of $100 at the time of sentencing.

02:16:03 13           And in paragraph 15, the parties understand that

02:16:07 14   this memorandum together with any terms in Attachment A

02:16:13 15   supercede all prior promises and are the final products of

02:16:15 16   the parties.

02:16:16 17           THE COURT:  Thank you, Ms. Hatcher.

02:16:18 18           So Mr. Williams, is there anything that the

02:16:21 19   prosecutor said about what's in the agreement that is

02:16:23 20   different than your understanding of what's in the

02:16:25 21   agreement?

02:16:26 22           THE DEFENDANT:  No, sir.

02:16:26 23           THE COURT:  And the prosecutor referenced this

02:16:31 24   Attachment A which is filed under seal.  Do you know what

02:16:38 25   Attachment A says?

02:16:40  1                      THE DEFENDANT:  Yes.

02:16:40  2                      THE COURT:  Okay.  And you agree that that's

02:16:42  3      correct?

02:16:43  4                      THE DEFENDANT:  Yes.

02:16:43  5                      THE COURT:  All right.  So the written plea

02:16:55  6      agreement, does that accurately reflect the agreement you

02:16:59  7      have reached with the government?

02:17:01  8                      THE DEFENDANT:  Yes, sir.

02:17:01  9                      THE COURT:  Has anyone made you any promises

02:17:03 10      that are not contained in the written plea agreement?

02:17:06 11                      THE DEFENDANT:  No, sir.

02:17:06 12                      THE COURT:  And has anyone threatened you or

02:17:09 13      forced you in any way to enter into the written plea

02:17:12 14      agreement?

02:17:13 15                      THE DEFENDANT:  No, sir.

02:17:13 16                      THE COURT:  Do you understand that you are under

02:17:15 17      oath now so you're not going to be able to tell me later

02:17:18 18      that you were promised something in order to plead guilty

02:17:22 19      because you're telling me now you weren't?

02:17:24 20                      THE DEFENDANT:  Yes, sir.

02:17:24 21                      THE COURT:  You understand that?

02:17:25 22                      THE DEFENDANT:  I understand.

02:17:26 23                      THE COURT:  So I take it you're a U.S. citizen?

02:17:30 24                      THE DEFENDANT:  Yes, sir.

02:17:30 25                      THE COURT:  And is this the first time you ever

02:17:33  1    pleaded guilty to a felony?

02:17:35  2                THE DEFENDANT:  Yes, sir.

02:17:36  3                THE COURT:  So do you understand that a felony

02:17:40  4    offense which this is causes the loss of valuable civil

02:17:45  5    rights such as the right to vote, the right to hold public

02:17:48  6    office, the right to serve on a jury and the right to

02:17:50  7    possess any kind of firearm or ammunition?

02:17:54  8                THE DEFENDANT:  Yes, sir.

02:17:54  9                THE COURT:  The maximum penalty that could be

02:17:57 10    imposed by statute are set forth in paragraph two of the

02:18:00 11    plea agreement, they include, and this is the maximum, 10

02:18:03 12    years of imprisonment, a $100 special assessment, three

02:18:07 13    years of supervised release, restitution in an amount that's

02:18:13 14    not really known at this time, and a fine of twice the gross

02:18:19 15    monetary loss to the victim which based on the conduct you

02:18:24 16    agreed to in paragraph 5 is probably somewhere between $3

02:18:31 17    million and $7 million.  Do you understand that?

02:18:33 18                THE DEFENDANT:  Yes, sir.

02:18:37 19                THE COURT:  Now, and Ms. Chavar, have you talked

02:18:40 20    about how your sentencing may play out?

02:18:44 21                THE DEFENDANT:  Yes.

02:18:45 22                THE COURT:  And have you discussed or are you

02:18:49 23    familiar at this point with something called the United

02:18:52 24    States Sentencing Guidelines?

02:18:53 25                THE DEFENDANT:  Yes, sir.

02:18:53 1          THE COURT:  And so do you understand that before

02:18:58 2     we get to sentencing, the United States Probation Office

02:19:02 3     will prepare a presentence investigation report for the

02:19:06 4     Court and then both you and the government will have a

02:19:09 5     chance to review that part and to challenge any of the facts

02:19:12 6     that are contained in it?

02:19:13 7          THE DEFENDANT:  Yes, sir.

02:19:14 8          THE COURT:  When we actually get to sentencing

02:19:16 9     which will probably be no earlier than like late August,

02:19:20 10    maybe beyond that, basically there a process we'll go

02:19:26 11    through at the beginning of the sentencing which will start

02:19:31 12    with this presentence report that's been prepared.  And in

02:19:34 13    it, it will have the probation officer's estimate of the

02:19:37 14    sentencing guidelines that apply to you.  Do you understand

02:19:40 15    that?

02:19:40 16         THE DEFENDANT:  Yes, sir.

02:19:41 17         THE COURT:  So the first step at the sentencing

02:19:43 18    will be if you or the government disagree with the probation

02:19:47 19    officer's assessment of the sentencing guidelines or any

02:19:51 20    other factor in this presentence report, you can raise the

02:19:54 21    issue and I'll rule on it.  And if the rule changes the

02:19:59 22    sentencing guidelines, I'll recalculate them and tell you

02:20:02 23    what they are.  That's the first step, do you understand

02:20:04 24    that?

02:20:05 25         THE DEFENDANT:  Yes, sir.

02:20:06  1          THE COURT:  So the second step is either you or

02:20:08  2  the government can do what's called make a motion for

02:20:12  3  departure from the guidelines which is when based on things

02:20:15  4  that are in the guidelines themselves, you asked to go above

02:20:21  5  or below what that guideline range is.  And if either side

02:20:27  6  makes such a motion, I'll consider it.  If I grant it, I'll

02:20:30  7  tell you how that affects my view of where we're at in terms

02:20:33  8  of the sentencing guidelines.  Do you understand that?

02:20:35  9          THE DEFENDANT:  Yes, sir.

02:20:36 10          THE COURT:  And then the third thing is either

02:20:38 11  you or the government can do what's called request a

02:20:41 12  variance which is when based on the statute that tells me

02:20:47 13  the various things that I'm supposed to consider in

02:20:51 14  sentencing anybody, they make -- there is argument that

02:20:56 15  sentence should be above or below whatever that last

02:20:59 16  guideline range was we had, and if there is a request for a

02:21:04 17  variance, I'll consider it and explain why I'm going to

02:21:08 18  grant it or not going to grant it.  And so that's kind of

02:21:16 19  the procedural part of the sentencing.  Does that all sound

02:21:19 20  familiar to you?

02:21:20 21          THE DEFENDANT:  Yes, sir.

02:21:20 22          THE COURT:  And at the sentencing, your

02:21:23 23  attorney, the government's attorney and you yourself will

02:21:26 24  have a chance to speak to me about what you think an

02:21:28 25  appropriate sentence is.  All right?

02:21:31 1                    THE DEFENDANT:  Yes, sir.

02:21:32 2                    THE COURT:  Do you need some water, Ms. Hatcher?

02:21:43 3                    MS. HATCHER:  I do.  I apologize, Your Honor.

02:21:47 4     Allergies.

02:21:58 5                    THE COURT:  All right.  Mr. Williams, so do you

02:22:03 6     understand that in the plea agreement, you're waiving most

02:22:07 7     if not all of your rights to appeal the sentence that I

02:22:11 8     impose?

02:22:12 9                    THE DEFENDANT:  Yes, sir.

02:22:13 10                   THE COURT:  And in fact it's broader than just

02:22:16 11    appeal, because sometimes people file what is popularly

02:22:22 12    known as a writ of habeas corpus.  You're waiving your right

02:22:26 13    to that, too.  Do you understand that?

02:22:27 14                   THE DEFENDANT:  Yes, sir.

02:22:27 15                   THE COURT:  So to be more precise, paragraph 13

02:22:39 16    sets forth exactly what the waiver is.  And essentially the

02:22:43 17    way it's set up, Mr. Williams, is it says, I'm not using the

02:22:49 18    language of the law here, but it says you give up all your

02:22:52 19    rights to complain about the sentence that I impose -- by

02:22:56 20    complain, I mean try to do something about it legally --

02:23:00 21    with very limited exceptions.  Do you understand that's kind

02:23:03 22    of the way it's set up, you're giving up everything, but a

02:23:06 23    little bit you're keeping.  And the little bit that you're

02:23:10 24    keeping is that you can file a motion or appeal if you're

02:23:14 25    raising a claim that Ms. Chavar provided ineffective

02:23:17  1   assistance of counsel, and you can appeal if the government

02:23:22  2   appeals, or if your sentence exceeds the statutory maximum

02:23:28  3   for the offense set forth in the United States Code, or if

02:23:31  4   the sentence unreasonably exceeds the sentencing guidelines

02:23:35  5   range determined by the United States Sentencing Guidelines.

02:23:41  6   Do you understand the little bit of rights that you're

02:23:43  7   keeping?

02:23:44  8                THE DEFENDANT:  Yes, sir.

02:23:44  9                THE COURT:  Okay.  And essentially if the

02:23:58 10   sentence you get is more severe than what you expect, or you

02:24:02 11   think it's unfair and harsh, basically you're going to have

02:24:07 12   -- there is nothing you can do about it, unless you fit into

02:24:11 13   one of those little categories.  Do you understand that?

02:24:14 14                THE DEFENDANT:  Understood.

02:24:16 15                THE COURT:  Do you also understand that there is

02:24:17 16   no parol in the federal system.  You're not going to be

02:24:24 17   released on parole.

02:24:26 18                THE DEFENDANT:  Yes, sir.

02:24:27 19                THE COURT:  Do you understand your sentence may

02:24:28 20   include payment of a fine and/or payment of restitution, and

02:24:35 21   it will certainly include the $100 mandatory special

02:24:39 22   assessment because that's mandatory.  Do you understand

02:24:41 23   that?

02:24:42 24                THE DEFENDANT:  Yes, sir.

02:24:43 25                THE COURT:  And there is also a forfeiture

02:24:46  1    provision in the plea agreement which I would think is --

02:24:56  2              MS. CHAVAR:  I believe it's paragraph 10 through

02:24:59  3    12, Your Honor.

02:25:00  4              THE COURT:  Right.

02:25:02  5              MS. CHAVAR:  Starting on page three.

02:25:04  6              THE COURT:  Right.  Has the government seized

02:25:09  7    any property from you so far that you know of?

02:25:11  8              THE DEFENDANT:  No, sir.

02:25:11  9              THE COURT:  Okay.  Well, if they haven't done so

02:25:15 10    now, they're probably unlikely to do so, but in the event

02:25:18 11    that they do, you're basically agreeing that you will do

02:25:21 12    nothing to oppose it and that you'll do everything you can

02:25:24 13    to help them forfeit your property.  Do you understand that?

02:25:28 14              THE DEFENDANT:  Yes, sir.

02:25:28 15              THE COURT:  Okay.  So Mr. Williams, you also

02:25:32 16    understand that you don't have to plead guilty.  You have

02:25:36 17    the right to continue -- I guess you never actually entered

02:25:41 18    a plea, but you can enter a plea of not guilty and we can

02:25:46 19    schedule a trial by jury on the charge during which you

02:25:50 20    would also have the right to the assistance of an attorney

02:25:53 21    for your defense including the right to have an attorney

02:25:56 22    appointed by the court if you couldn't afford one, you would

02:25:59 23    have the right to see and hear all the witnesses and have

02:26:01 24    them cross-examined in your own defense or in your defense,

02:26:05 25    you would have the right on your own part not to testify

02:26:08  1    unless you voluntarily choose not to do so in your own

02:26:11  2    defense, and you would have the right to compel the

02:26:14  3    attendance of witnesses to testify on your behalf.  Do you

02:26:17  4    understand you have all of those rights?

02:26:18  5                 THE DEFENDANT:  Yes, sir.

02:26:20  6                 THE COURT:  And do you understand if there were

02:26:22  7    a trial and you decided not to testify and not to put on any

02:26:26  8    evidence, the fact that you didn't testify or didn't put on

02:26:30  9    any evidence couldn't be used against you by the jury to

02:26:33 10    convict you?

02:26:34 11                 THE DEFENDANT:  Yes, sir.

02:26:34 12                 THE COURT:  You further understand by entering a

02:26:36 13    plea of guilty there is not going to be a trial?

02:26:39 14                 THE DEFENDANT:  Understood.

02:26:40 15                 THE COURT:  As a result you will have given up

02:26:42 16    your right to a trial by jury as well as the other rights

02:26:45 17    associated with the trial by jury.

02:26:47 18                 THE DEFENDANT:  Understood.

02:26:47 19                 THE COURT:  You also understand that if this

02:26:50 20    case were to go to trial, it would be the government's

02:26:53 21    burden to prove to the jury beyond a reasonable doubt each

02:26:57 22    of the essential elements of the offense, and the jury

02:27:01 23    before it could convict you, it would have to unanimously

02:27:07 24    agree to your guilt?

02:27:07 25                 THE DEFENDANT:  Understood.

02:27:08  1          THE COURT:  Now, the essential elements of the

02:27:13  2   offense with which you're charged are stated in the plea

02:27:16  3   agreement and were noted by the prosecutor.  I'm going to

02:27:21  4   note them again to make sure that you understand them.

02:27:24  5          Do you understand what the government would have

02:27:25  6   to prove beyond a reasonable is that somebody else who the

02:27:31  7   plea agreement calls Person 1 was an agent of the

02:27:36  8   University.

02:27:37  9          Two.  That the University received federal

02:27:42 10   benefits in excess of $10,000 in a one-year period.

02:27:46 11          Three.  That the Defendant, that would be you,

02:27:52 12   gave a thing of value, in particular cash, to Person 1.

02:27:59 13          Four.  You acted corruptly with the intent to

02:28:04 14   influence Person 1 with respect to a transaction or series

02:28:10 15   of transactions of the University.

02:28:11 16          And five.  That the value of the transaction or

02:28:16 17   series of transactions to which the payment related was at

02:28:22 18   least $5,000.

02:28:25 19          It's kind of abstract if you don't know what's

02:28:28 20   being talked about here, but do you understand that, in

02:28:32 21   fact, that's what the government would have to prove in

02:28:34 22   order to convict you of this crime?

02:28:37 23          THE DEFENDANT:  Yes, sir.

02:28:40 24          THE COURT:  And do you understand that if I

02:28:43 25   accept a guilty plea, the government is not going to have to

02:28:46 1    prove anything because you're admitting it all?

02:28:49 2                    THE DEFENDANT:  Yes, sir.

02:28:49 3                    THE COURT:  Are you pleading guilty of your own

02:28:51 4    freewill because you are, in fact, guilty of this crime?

02:28:54 5                    THE DEFENDANT:  Yes, sir.

02:28:54 6                    THE COURT:  Can you tell me briefly what it is

02:28:57 7    that you did that makes you think you should pleading guilty

02:29:00 8    to this crime?

02:29:01 9                    THE DEFENDANT:  I assisted out of state students

02:29:04 10   at Delaware State University in gaining in-state tuition or

02:29:09 11   tuition free.

02:29:11 12                   THE COURT:  Did you assist them -- did part of

02:29:12 13   that involve giving cash payments to an official at Delaware

02:29:17 14   State University?

02:29:17 15                   THE DEFENDANT:  Yes, it did.

02:29:18 16                   THE COURT:  And that official that you gave the

02:29:21 17   cash to had the power to change a student's in-state or

02:29:29 18   out-of-state status?

02:29:30 19                   THE DEFENDANT:  Yes, sir.

02:29:31 20                   THE COURT:  And you gave this person -- and

02:29:35 21   basically every time a student tuition was switched from out

02:29:40 22   of state to in-state, do you have an idea of roughly how

02:29:45 23   much money a semester or year that saved them?

02:29:48 24                   THE DEFENDANT:  I don't.

02:29:49 25                   THE COURT:  But it was multiple thousands of

02:29:51  1    dollars a year; right?

02:29:53  2            THE DEFENDANT:  Yes.

02:29:53  3            THE COURT:  And do you have an idea of

02:29:56  4    approximately how many different students you assisted doing

02:30:00  5    this?

02:30:01  6            THE DEFENDANT:  I don't.

02:30:01  7            THE COURT:  Was it more than ten?

02:30:03  8            THE DEFENDANT:  Yes, it was more than ten.

02:30:06  9            THE COURT:  All right.  So I'm going to ask the

02:30:14 10    prosecutor to summarize what the government would prove if

02:30:18 11    the case went to trial.  And listen carefully because I'm

02:30:21 12    going to ask you afterwards whether she said anything that

02:30:25 13    you significantly disagree with.  Okay?

02:30:27 14            THE DEFENDANT:  Yes, sir.

02:30:27 15            THE COURT:  All right.  Ms. Hatcher, what would

02:30:29 16    the government prove if the case went to trial.

02:30:32 17            MS. HATCHER:  Yes, Your Honor.  Were this case

02:30:34 18    to go to trial, the government would prove the following:

02:30:36 19            Stephen Williams was the leader of a scheme that

02:30:39 20    he executed at Delaware State University whereby he would

02:30:43 21    recruit DSU students --

02:30:43 22            THE COURT:  Ms. Hatcher, a little bit slower.

02:30:45 23            MS. HATCHER:  I apologize.  I'll start from the

02:30:48 24    beginning.

02:30:48 25            THE COURT:  Okay.

02:30:49  1          MS. HATCHER:  Stephen Williams was the leader of

02:30:51  2     a scheme that he executed at Delaware State University

02:30:54  3     whereby he would recruit DSU students to pay him a fee to

02:30:58  4     make changes in their student registration from out-of-state

02:31:01  5     residency to in-state residency.  DSU is an institution that

02:31:05  6     received federal funding in excess of $10,000 during each of

02:31:09  7     the years implicated by the co-defendants' conduct, that is,

02:31:13  8     from at least 2013 to 2017.  Williams is a DSU alumni.

02:31:18  9          Williams ran his residency scheme at DSU from

02:31:21 10     approximately 2013 to 2017.  To do so, Williams recruited

02:31:25 11     DSU students who agreed to pay him a fee -- which fee varied

02:31:30 12     from several hundred dollars to several thousand dollars --

02:31:33 13     and in turn Williams created or oversaw the creation of

02:31:37 14     false documentation, such as forged leases.  Williams then

02:31:37 15     delivered the forged documents to co-Defendant Crystal

02:31:42 16     Martin, who was then an Associate Registrar at DSU, who

02:31:46 17     placed the forged paperwork in the student's file,

02:31:49 18     justifying the residency change she recorded in the

02:31:52 19     university system.  For each student that paid Williams a

02:31:54 20     fee, Williams paid Martin a small portion of the money he

02:31:58 21     collected.  Although the total amount that Williams profited

02:32:01 22     from his scheme is unknown, Williams paid Martin

02:32:05 23     approximately $70,000 over the course of four years.

02:32:07 24          Apart from his own direct student recruitment,

02:32:10 25     Williams also provided discounts, free registration changes,

02:32:14 1    or small fees to "referral agents":  DSU students who in

02:32:20 2    turn recruited other DSU students to change their

02:32:20 3    registration status.

02:32:23 4              The estimated cost to the public university of

02:32:24 5    students improperly receiving in-state tuition as a result

02:32:28 6    of the defendant's scream during the time period of 2013 to

02:32:31 7    2017 exceeded $3 million.

02:32:35 8              THE COURT:  Do you know, Ms. Hatcher, how many

02:32:39 9    different students we're talking about?

02:32:42 10             MS. HATCHER:  An approximate standing here today

02:32:45 11   is I think it was about 300.

02:32:48 12             THE COURT:  Okay.  All right.  Did you hear

02:32:54 13   anything there, Mr. Williams, that you disagree with?

02:32:58 14             MS. CHAVAR:  Your Honor, if I may for

02:33:00 15   Mr. Williams.

02:33:02 16             THE COURT:  Sure.

02:33:03 17             MS. CHAVAR:  So, Your Honor, many of the facts

02:33:07 18   that Ms. Hatcher proffered are facts which we will address

02:33:14 19   at sentencing, and I'll be more specific, so we do not admit

02:33:19 20   to those today.  Mr. Williams is here today to plead guilty.

02:33:26 21   I would note that since my appointment to him of over a year

02:33:30 22   ago, he always intended to plead guilty.  That has never

02:33:34 23   changed.  The sticking point, though, was who the leader

02:33:39 24   was.

02:33:39 25             THE COURT:  Okay.  Well, that's -- I'm going to

02:33:43  1   let you go, but that makes no difference whether he was a

02:33:47  2   leader or follower for the purposes of today's proceeding.

02:33:50  3   But I have invited you -- so you got a marker on leader.

02:33:54  4            MS. CHAVAR:  Of course I understand that, Your

02:33:56  5   Honor.  But I'm not -- so that is the reason that we don't

02:34:01  6   agree with all of those facts.  And we will address them at

02:34:05  7   sentencing.

02:34:05  8            THE COURT:  That's fine.  But the other things,

02:34:08  9   the general gist of $70,000 paid to Martin, $3 million the

02:34:14 10   University lost, 300 students, do you have any serious

02:34:18 11   disagreement with those?

02:34:19 12            MS. CHAVAR:  We don't have any serious

02:34:21 13   disagreement.  We have not challenged that paperwork.  We

02:34:24 14   have accepted what the government has told us and do not

02:34:27 15   challenge it.  And Mr. Williams is here today to say that

02:34:33 16   he's guilty of engaging in a scheme with Ms. Martin where

02:34:37 17   they collected a fee from students to have their

02:34:42 18   out-of-state status changed to in-state.  And in so doing it

02:34:53 19   caused the theft of several funds of the University.

02:34:56 20            THE COURT:  Other than that, is there anything

02:34:59 21   you want to raise?

02:35:00 22            MS. CHAVAR:  No, Your Honor.

02:35:00 23            THE COURT:  Okay.  All right.  Well, as I have

02:35:05 24   said, the question of who was the leader of this scheme is

02:35:11 25   important to Mr. Williams and it is important to Ms. Martin

02:35:17  1   in terms of sentencing, but in terms of guilty plea it makes

02:35:21  2   no difference who is the leader.  So we can go ahead on that

02:35:25  3   basis.

02:35:26  4          So Mr. Williams, because this is your first

02:35:30  5   appearance in open court, you have the right to have the

02:35:35  6   information read out loud.  You also have the right to waive

02:35:39  7   the reading of the information.  What do you want to do?

02:35:43  8          THE DEFENDANT:  I would like to waive it.

02:35:44  9          THE COURT:  I will accept that.

02:35:46 10          Is there anything further, Ms. Chavar, that I

02:35:50 11   should ask Mr. Williams before asking him how he now pleads?

02:35:53 12          MS. CHAVAR:  No, Your Honor.

02:35:54 13          THE COURT:  Mr. Williams, at this time how do

02:35:56 14   you now plead to the charge that we have been discussing,

02:36:00 15   theft and bribery concerning program receiving federal

02:36:05 16   funds, guilty or not guilty?

02:36:06 17          THE DEFENDANT:  Guilty.

02:36:07 18          THE COURT:  It is the finding of the Court in

02:36:09 19   the case of the United States versus Stephen Williams that

02:36:12 20   the Defendant is fully competent and capable of entering an

02:36:16 21   informed plea and his plea of guilty is a voluntary plea

02:36:21 22   supported by an independent basis in fact containing each of

02:36:26 23   the essential elements of the offense, therefore, his plea

02:36:27 24   of guilty is accepted and he is now adjudged guilty of the

02:36:31 25   offense.

02:36:32  1          The last thing I need for him, for you in terms

02:36:35  2     of the guilty plea today, Mr. Williams, is to sign the back

02:36:38  3     of the information acknowledging your plea and then

02:36:44  4     Ms. Chavar will come forward and get that.  I will also sign

02:36:47  5     the Memorandum of Plea Agreement indicating that I accept

02:36:53  6     it.

02:37:09  7          MS. CHAVAR:  And now I'm handing up for the

02:37:12  8     Court an executed acknowledgment of a guilty plea to the

02:37:15  9     information.

02:37:16 10          THE COURT:  Thank you.

02:37:17 11          THE CLERK:  The plea has been entered.

02:37:18 12          THE COURT:  All right.  So do we have a proposed

02:37:23 13     sentencing day?

02:37:25 14          COURT CLERK:  I have Friday, September 6th,

02:37:28 15     2019, at 9:00 a.m.

02:37:34 16          THE COURT:  Does that work --

02:37:38 17          MS. CHAVAR:  I am not available.

02:37:40 18          THE COURT:  Okay.  So will you be available the

02:37:46 19     following week?

02:37:47 20          MS. CHAVAR:  I am starting what is scheduled to

02:37:52 21     be a six-week trial that first week in September.

02:37:58 22          THE COURT:  Okay.  Set is that a trial here in

02:38:02 23     Delaware?

02:38:02 24          MS. CHAVAR:  No, it's in federal court in

02:38:04 25     Philadelphia.

02:38:08 1          THE COURT:  So hold the thought, Ms. Chavar.

02:38:10 2          Ms. Hatcher, does it make any difference -- we

02:38:17 3   can do one of two things.  We could schedule it for

02:38:20 4   September 6th and recognize that -- when does your trial

02:38:25 5   actually start?

02:38:26 6          MS. CHAVAR:  May I look at my calendar?

02:38:29 7          THE COURT:  Yes.

02:38:31 8          MS. CHAVAR:  And the case is United States

02:38:33 9   versus Rimes, it's before Judge Goldberg in the Eastern

02:38:37 10  District Court.  So the trial starts on the 9th.  I have

02:39:06 11  that -- those days blocked out for pretrial motions, but I

02:39:11 12  can't say to Your Honor right now that I know that's going

02:39:14 13  to be hearing dates.  I think I blocked that, so I can --

02:39:18 14         THE COURT:  Why don't we do this, unless

02:39:21 15  Ms. Hatcher has a different thought, which is why don't we

02:39:27 16  schedule for September 6th at 9:00 a.m.  We'll sort of get

02:39:32 17  ready for it like it's that, but at some point if you

02:39:36 18  determine either the court is going to need you on

02:39:38 19  September 6th, or that even if the court doesn't need you,

02:39:43 20  you can't possibly do justice for that client without being

02:39:46 21  full-time working on that, I'll continue the sentencing.

02:39:51 22         MS. CHAVAR:  Very well.  Thank you, Your Honor.

02:39:52 23         THE COURT:  Does that work for you, Ms. Hatcher?

02:39:54 24         MS. HATCHER:  No objection, Your Honor.

02:39:55 25         THE COURT:  So we'll schedule sentencing for

September 6, 2019, at 9:00 a.m.  And as you just heard,
Mr. Williams, and I mention this because I think in a few
minutes I'm going to be releasing you on bail, you have to
be here then unless you get confirmed word from your
attorney or some other reliable person like a probation
officer that we've postponed it for one reason or another.
So that's the date.

Mr. Williams, we will get a written presentence
report prepared by the probation office to assist me in
sentencing.  You will be asked to give information for the
report and your attorney may be present with you when you do
so if you wish.

You and your attorney will be able to read the
presentence report and file any objections to it before the
sentencing hearing.  You and your attorney will have an
opportunity to speak on your behalf at the sentencing
hearing.  If there is a victim of the offense, it seems like
there is, it will have the opportunity to speak at the
sentencing hearing.

And normally I would tell you that you and your
attorney need to promptly contact the probation office to
get the presentence process started, but we have a probation
officer sitting in the courtroom so I think this counts.

So we need to decide what to do about bail.  So
I have been provided a pretrial services report, which is

six-pages long, and the probation office proposed order
setting conditions of release.  Are these documents that you
all have, Ms. Chavar?

          MS. CHAVAR:  I have reviewed them, Your Honor,
yes.  I don't have a paper copy with me, but I'm familiar of
what's in them.

          THE COURT:  Ms. Hatcher, does the government
have any different position than essentially I can do just
what the probation office has advised me to do?

          MS. HATCHER:  No, the government agrees with
probation.

          THE COURT:  Ms. Chavar, are you comfortable with
what the probation office has recommended?

          MS. CHAVAR:  Yes, Your Honor.

          THE COURT:  So Mr. Williams is dutifully in here
today, I guess he's known about this for at least a year, so
I don't think there is any risk of flight.  And in terms of
danger to the community and the way it's usually referred
to, there is no evidence he's a danger to the community.  So
I'm going to release him on bail.

          Mr. Williams, so I'm going to release you on
bail.  There are some conditions that the probation office
thinks are appropriate which seem to be backed up by the
report.  Let me just tell you what they are.  Most of them I
don't think will be too hard for you.

02:43:13   1          So you got to submit to the supervision and

02:43:18   2     report for supervision to the District of Delaware U.S.

02:43:22   3     Probation Office no later than May 28th, which I think is on

02:43:25   4     Tuesday.   There is a telephone number which is in the order,

02:43:31   5     (302)252-2950.   I understand you're currently employed, but

02:43:36   6     in case something happens, you have to continue to actively

02:43:40   7     seek employment.

02:43:41   8          I guess you told me you're working on another

02:43:46   9     degree.   So one of the conditions is to continue or start an

02:43:55  10     education program.   More seriously here, you're not to

02:44:01  11     obtain a passport or other international travel documents.

02:44:05  12     In terms of your movements, travel is restricted to the

02:44:11  13     District of Delaware which is the same as the State of

02:44:14  14     Delaware, so Delaware and New Jersey, because I understand

02:44:17  15     you work in New Jersey, but basically other than Delaware

02:44:21  16     and New Jersey, you can't go anywhere.   It actually says you

02:44:32  17     can't go to New Jersey other than in relation to employment.

02:44:36  18     Is that agreeable?

02:44:38  19          THE DEFENDANT:   Yes.

02:44:38  20          THE COURT:   So you're not to possess a firearm,

02:44:44  21     destructive device, or other weapon.

02:44:46  22          THE DEFENDANT:   No.   I thought you asked if I

02:44:49  23     was in possession of a firearm.

02:44:51  24          MS. CHAVAR:   He thought you asked him if he had

02:44:52  25     a firearm, and he said no.

02:44:54 1          THE COURT:  In any event, so don't get one.

02:44:56 2   You're not to use alcohol excessively.  I don't understand

02:45:03 3   you to have any drug history, but nevertheless, you may not

02:45:07 4   use or unlawful possess a narcotic drug or other controlled

02:45:12 5   substance unless prescribed by a licensed medical

02:45:16 6   practitioner.  If the probation officer determines that you

02:45:20 7   need to submit to testing for a prohibited substance, you're

02:45:25 8   going to need to do that.  Testing may be used with random

02:45:33 9   frequency for any form of prohibited substance.  If there is

02:45:40 10  such testing, you must not obstruct or tamper with the

02:45:45 11  efficiency or accuracy of the prohibited substance screening

02:45:49 12  or testing.

02:45:49 13          So you're to report as soon as possible to the

02:45:55 14  pretrial office, the supervising officer every contact with

02:46:00 15  law enforcement personnel including arrest, questioning or

02:46:05 16  traffic stops.  If you get a speeding ticket, which I guess

02:46:08 17  is not impossible for you, you need to call the probation

02:46:12 18  office and tell them about it.  Okay?

02:46:14 19          THE DEFENDANT:  Yes, sir.

02:46:15 20          THE COURT:  And you should continue to attend

02:46:17 21  any counseling meetings or maintain sponsor reporting for

02:46:25 22  any gambling issue.  Okay?

02:46:28 23          THE DEFENDANT:  Yes, sir.

02:46:29 24          THE COURT:  So that's it.  I'm going to sign

02:46:31 25  this.

02:46:31  1          MS. CHAVAR:  Excuse me, Your Honor.  I think

02:46:33  2  Mr. Williams had a question for me about New Jersey and

02:46:36  3  travel.  Mr. Williams is also a coach for football team in

02:46:56  4  New Jersey, so I think that that only allows him to go where

02:47:01  5  his employment in New Jersey, which is a school.

02:47:04  6          THE COURT:  So I'm pretty -- I'm perfectly happy

02:47:10  7  to say just Delaware and New Jersey, and I don't really care

02:47:13  8  what you're doing in New Jersey as long as it's nothing that

02:47:17  9  you wouldn't do in Delaware.  Okay?

02:47:19 10          MS. CHAVAR:  Thank you, Your Honor.

02:47:20 11          THE DEFENDANT:  Thank you.

02:47:21 12          THE COURT:  So let me just -- so I'm just going

02:47:25 13  to make this travel restricted to the District of Delaware

02:47:29 14  and the State of New Jersey.  Okay?

02:47:36 15          MS. CHAVAR:  Thank you, Your Honor.

02:47:37 16          THE COURT:  All right.  So I'm going to sign

02:47:39 17  here.  And so when we're finished, Mr. Williams, you'll have

02:47:54 18  to sign in the appropriate place.  But let me just finish

02:47:59 19  here.

02:47:59 20          So we have a sentencing date.  As I mentioned

02:48:02 21  before, you do have to appear for the sentencing.  Failure

02:48:08 22  to appear as required is a new crime for which you could be

02:48:12 23  sentenced to imprisonment.  Further, if you fail to appear

02:48:18 24  and we have to postpone the proceeding, you probably end up

02:48:22 25  being arrested and then have to wait in jail for the

02:48:27  1    sentencing.  So make sure you appear as required.

02:48:35  2                   Is there anything further, Ms. Hatcher?

02:48:39  3                   MS. HATCHER:  No, Your Honor.

02:48:40  4                   THE COURT:  Ms. Chavar?

02:48:42  5                   MS. CHAVAR:  No, Your Honor.

02:48:43  6                   THE COURT:  All right.  Well, then, I will

02:48:44  7    recess court.  Mr. Williams, make sure you sign the

02:48:48  8    paperwork.  We'll be in recess.

02:48:49  9                   (Court recessed at 2:48 p.m.)

         10

         11                   I hereby certify the foregoing is a true
               and accurate transcript from my stenographic notes in the
         12    proceeding.

         13

         14                                  /s/ Dale C. Hawkins
                                           Official Court Reporter
         15                                   U.S. District Court

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25