IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEPHEN WILLIAMS, | : | |
| | : | |
| Movant/Defendant, | : | |
| | : | |
| v. | : | Crim. Act. No. 19-57-RGA |
| | : | Civ. Act. No. 20-897-RGA |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent/Plaintiff. | : | |

**MEMORANDUM OPINION**

Stephen Williams.  *Pro se* Movant.

Laura D. Hatcher, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Attorney for Respondent.

June 30, 2023
Wilmington, Delaware

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is Movant Stephen Williams' *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.  (D.I. 31; D.I. 34)  The Government filed an Answer in Opposition, to which Movant filed a Reply.  (D.I. 61; D.I. 62)  For the reasons that follow, Movant's § 2255 Motion is denied.

I.      BACKGROUND

Over the four-year period from 2013 through 2017, Movant assisted approximately 300 "out-of-state students at Delaware State University ["DSU"] in gaining in-state tuition or tuition free." (D.I. 21 at 20-21, 23)  More specifically,

> [Movant] recruited DSU students who agreed to pay him a fee – which fee varied from several hundred dollars to several thousand dollars – and in turn [Movant] created or oversaw the creation of false documentation, such as forged leases. [Movant] then delivered the forged documents to co-Defendant Crystal Martin, who was then an Associate Registrar at DSU, who placed the forged paperwork in the student's file, justifying the residency change she recorded in the university system.  For each student that paid [Movant] a fee, [Movant] paid Martin a small portion of the money he collected.  Although the total amount that [Movant] profited from his scheme is unknown, [Movant] paid Martin approximately $70,000 over the course of four years.
>
> Apart from his own direct student recruitment, [Movant] also provided discounts, free registration changes, or small fees to "referral agents":  DSU students who in turn recruited other DSU students to change their registration status.
>
> The estimated cost to the public university of students improperly receiving in-state tuition as a result of [Movant's] scheme during the time period of 2013 to 2017 exceeded $3 million.

(D.I. 21 at 22-23)

On April 16, 2019, the Government filed a one-count felony Information, charging Movant with federal program bribery, in violation of 18 U.S.C. § 666(a)(2). (D.I. 1) On May 24, 2019, Movant waived Indictment and entered a guilty plea to the one-count felony Information. (D.I. 5; D.I. 6; D.I. 21) The Parties stipulated that the loss amount to the victim was between $1.5 and $3.5 million. (D.I. 6 at 2; D.I. 21 at 8) In exchange for entering a guilty plea, the Government agreed it would not oppose a two-level reduction to the offense level related to the sentencing guidelines, or a three-level reduction if the sentencing guidelines were 16 or greater. (D.I. 6 at 2; D.I. 21 at 8-9)

The United States Probation Office prepared a draft Presentence Investigation Report ("PSR") on July 26, 2019 which calculated the loss amount, based on at least 254 students being involved in the scheme, as being at least $3,202,300. (D.I. 9 at 6) In November 2019, defense counsel ("Attorney #1") moved to withdraw, citing irreconcilable conflict, a request the Court granted. (D.I. 13, 15) The Court appointed Attorney #2 to represent Movant on November 20, 2019. Following discussions with Attorney #2, the Probation Office filed an amended PSR on January 24, 2020, which calculated a Guideline Range of 70-87 months based on a fraud loss of $1.5-$3.5 million which, in turn, was based upon at least 254 students being involved in the scheme. (D.I. 27 at 9) During the sentencing hearing on January 31, 2020, the Court accepted the amended PSR as its findings of fact and conclusions of law. (D.I. 29 at 5) When discussing the loss calculation, both the Court and Movant referenced the Government's estimate that there were 250 student beneficiaries. (D.I. 29 at 5, 16) At the close of the hearing the Court varied downward from 70-87 months to impose a sentence of 42 months of incarceration, as well as restitution of $3,202,300. (D.I. 28; D.I. 29 at 50-51) Movant did not file an appeal.

On July 1, 2020, Movant filed a form application for relief under 28 U.S.C. § 2255, asserting the following three ineffective assistance of counsel Claims: (1) Attorney #2 failed to contest a sixteen-point sentencing enhancement (D.I. 31 at 4); (2) Attorney #1 failed to file pre-trial motions (*id*. at 5); and (3) Attorney #1 failed to challenge constitutional and statutory defects, such as "inadequate articulation of the essential elements, violating Due Process, selective and vindictive prosecution, failure to timely file a motion to dismiss, and insufficient notice of the charges" (*id*. at 7).  On July 27, 2020, Movant filed a "Motion to Amend 2255 Motion," asserting the following three ineffective assistance of counsel Claims:  (1) Attorney #1 provided ineffective assistance by stating Movant was facing a mandatory minimum for wire fraud before Movant waived Indictment, and by failing to explain the difference between pleading guilty "to violating 18 U.S.C. § 666(a)(1)(B) (which [Movant] waived) and 18 U.S.C. § 666(a)(2)," because pleading to violating § 666(a)(2) made him "seem more like a leader in the scheme, which he was not" (D.I. 34 at 3); (2) Attorney #1 failed to advise Movant of the Government's burden of proof regarding loss and also failed to challenge the loss amount (*id*. at 3-4); and (3) Attorney #2 failed to oppose the loss amount at sentencing and did not appeal the loss amount, restitution, or students (*id*. at 5).  The Government responded, providing affidavits from Attorneys #1 and #2. (D.I. 61)  In his Reply to the Government's Answer, Movant primarily provides support for the second and third Claims in his amended Motion.  (D.I. 62)

## II.     DISCUSSION

Given the overlap between Claim One in Movant's initial § 2255 Motion and Claims Two and Three in his amended § 2255 Motion, the Court views Movant's entire Motion as asserting the following five ineffective assistance of counsel Claims: (1) Attorney #1 provided ineffective assistance during the plea process (*e.g.*, failed to file pre-trial motions and failed to

3

challenge constitutional and statutory defects, such as "inadequate articulation of the essential elements, violating Due Process, Selective and Vindictive Prosecution, [and] Insufficient Notice of the Charges") (D.I. 31 at 5, 7); (2) Attorney #1 did not explore other plea options (D.I. 34 at 3); (3) Attorney #1 did not properly advise Movant before he waived Indictment (*id*. at 3); (4) Attorneys #1 and #2 failed to challenge the Government's loss calculation (D.I. 31 at 4; D.I. 34 at 3-5); and (5) Attorney #2 failed to appeal the loss amount (D.I. 34 at 5).

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. Under the second ("prejudice") prong of the *Strickland* standard, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id*. at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id*. at 689.

    A. **Claim One: Attorney #1 Provided Ineffective Assistance During the Plea Process**

4

During Movant's plea colloquy, the Court explained the difference between an Information and an Indictment, and explained the terms of the Waiver of Indictment Movant had signed. Movant indicated he understood the rights he was waiving. (D.I. 21 at 5) Both the Court and the Government explained the elements of the offenses in the Information and the terms of the Plea Agreement. Movant informed the Court that he understood both explanations concerning the elements and that the written Plea Agreement reflected the agreement he reached with the Government. (*Id*. at 7-11, 19-20) Movant also indicated that Attorney #1 had discussed the Plea Agreement with him, that he understood the Agreement and the charge to which he was pleading guilty (§ 666(a)(2)), and that Attorney #1 had explained the sentencing process and the Sentencing Guidelines. (D.I. 21 at 6-15, 20) Movant stated that no one had threatened or promised him anything, and that he was pleading guilty because he was, in fact, guilty. (*Id*. at 11, 20) Finally, Movant informed the Court that he was "fully satisfied" with the advice provided by Attorney #1, and that he had had enough time to discuss the case with Attorney #1. (*Id.* at 5-6)

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity," which creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In this proceeding, Movant has failed to provide any evidence as to why the statements he made during the plea colloquy – *e.g.*, that he was satisfied with Attorney #1's representation and he was, in fact, guilty of violating § 666(a)(2) – should not be presumptively accepted as true. Having no cause to doubt the veracity of Movant's statements at the time of his plea hearing provides a sufficient basis for concluding that Attorney #1 did not provide ineffective assistance by failing to file motions prior to the plea colloquy. In addition, Movant waived the non-jurisdictional pre-plea errors alleged in Claim

5

One when he entered his guilty plea. *See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (explaining that voluntary and knowing guilty plea bars a defendant from raising antecedent non-jurisdictional constitutional violations "not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is established."); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Accordingly, the Court will deny Claim One as meritless.

### B. Claim Two: Attorney #1's Failure to Explore Other Plea Options

Movant asserts Attorney #1 provided ineffective assistance by not "explain[ing] the difference between pleading to 18 U.S.C. § 666(a)(1)(B) (which [he] waived) and 18 U.S.C. § 666(a)(2)." (D.I. 34 at 3) While not entirely clear, Movant appears to believe that he waived the opportunity to plead guilty to § 666(a)(1)(B) in his Waiver of Indictment, and that he would have received a lesser sentence if he had not entered a guilty plea to § 666(a)(2).

As an initial matter, the Court accepts the Government's explanation that the reference to § 666(a)(1)(B) in Movant's Waiver of Indictment was the result of a drafting error. (D.I. 61 at 12 n. 4) The Court further notes that both the Information and the Plea Agreement correctly refer to § 666(a)(2) as the provision to which Movant pled guilty. Importantly, the plea colloquy transcript demonstrates that the Court informed Movant of the rights he was substantively forfeiting by waiving Indictment, and also demonstrates that Movant understood the Information and the nature of the § 666(a)(2) offense to which he was pleading guilty. Given these

circumstances, Movant cannot demonstrate that he was prejudiced by the drafting error in the Waiver of Indictment or by Attorney #1's failure to flag the drafting error.

To the extent Movant's contention regarding Attorney #1's failure to explain the consequences of pleading guilty to § 666(a)(1)(B) is an attempt to argue that Attorney #1 was ineffective for failing to negotiate a plea agreement to a violation of § 666(a)(1)(B), the argument is unavailing. By its own terms, § 666(a)(1)(B) is inapplicable to Movant, because he was not an "agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof."[1] 18 U.S.C. § 666(a)(1). Therefore, Attorney #1 did not perform deficiently by failing to pursue a plea offer to an unavailable alternative charge.

To the extent Movant asserts that he received a harsher sentence by pleading to § 666(a)(2) because the language in § 666(a)(2) symbolically made him appear to be the leader, the argument is unpersuasive. Despite the implied leadership language in § 666(a)(2), Movant was not given a leadership enhancement under U.S.S.G. § 3B1.1. (*See* D.I. 61 at 13) Moreover, even if pleading to a violation of § 666(a)(1)(B) had been a viable option for Movant, Movant cannot demonstrate that his sentence under § 666(a)(2) was necessarily harsher, because violations of § 666(a)(1)(B) and § 666(a)(2) are punished in the same manner.[2] (*See* D.I. 61 at 12-13; *see also* D.I. 27 at 9 (calculation used in the final presentence report)) Given these circumstances, Movant cannot demonstrate a reasonable probability that he would not have pled guilty to violating § 666(a)(2), or that he would have received a lesser sentence, but for Attorney #1's failure to discuss the consequences of pleading guilty to an offense he had not committed.

---

[1]In contrast, Movant's co-defendant (an administrative officer at DSU) was charged with violating 18 U.S.C. § 666(a)(1)(B). (*See* D.I. 1 in *United States v. Martin*, Crim. A. No. 19-44-RGA).

[2]*See* U.S.S.G. Guidelines Manual App. A (listing governing Guidelines sections by offenses) (2018 Guidelines Manual).

Accordingly, the Court will deny Claim Two for failing to satisfy either prong of the *Strickland* standard.

### C. Claim Three: Attorney #1's Failure to Properly Advise Movant Regarding his Waiver of Indictment

In Claim Three, Movant contends that Attorney #1 provided ineffective assistance by failing to inform him about the approximate nature of the Government's fraud loss calculations before he agreed to waive Indictment. (D.I. 34 at 4) Distilled to its core, Movant's argument appears to be that he would not have waived Indictment but for Attorney #1's failure to inform him about the approximate nature of the fraud loss calculation. This argument is unavailing.

As an initial matter, the record disputes Movant's contention that he was not aware of the approximate nature of the Government's fraud loss calculations before signing the Waiver of Indictment on May 24, 2019, the same day he entered his guilty plea. As Attorney #1 explains in her responsive affidavit:

> [Attorney #1] requested an opportunity to have [Movant] meet with the prosecutors for them to present information to [Movant and Attorney #1] in a reverse proffer.
>
> \*          \*          \*
>
> [Movant and Attorney #1] met for the reverse proffer at the U.S. Attorney's Office on or about November 1, 2018. The Assistant United States Attorney discussed the case, including the audit by the university of potential student beneficiaries that had identified hundreds of students. They also discussed the process of checking the audit numbers, which included interviewing 50 plus students that almost all confirmed the scheme and [Movant's] involvement.
>
> The [G]overnment informed [Movant] of the intended charge of bribery in violation of 18 U.S.C. § 666(a)(2), as well as the potential guideline range depending on whether [Movant] accepted responsibility through a plea agreement or went to trial.
>
> The [Government] did tell [Movant] that they would be interested in having him cooperate against others if he felt able, though not

8

> Ms. Martin. They said that cooperation could affect his sentence. He asked if cooperation could take him down to a probationary sentence, and they said it depended on the cooperation and they could not guarantee what a final recommendation post-cooperation would be.

(D.I. 61-2 at 2-3)

Attorney #1 also explains how, between Movant's November 1, 2018 meeting with the Government and Movant's May 24, 2019 plea colloquy, the Government produced the DSU audit report and other discovery showing the basis for its reasonable loss estimate. (D.I. 61-2 at 4) Attorney #1 scheduled multiple meetings with Movant at her office so that he could review the discovery materials, yet Movant "did not show up for [an] appointment" on "at least one occasion." (*Id.*) In his unsworn Reply, Movant disputes Attorney #1's version of events, and asserts that Attorney #1 never shared the discovery material prior to his plea colloquy. (D.I. 62 at 1-2)

Even if the Court were to accept Movant's unsupported contention about Attorney #1's alleged misrepresentation of facts– which it does not[3] – the fraud loss range was an express component of Movant's Plea Agreement and was extensively discussed in open court during the plea colloquy. (D.I. 21 at 22-25) In other words, any failure on Attorney #1's part in sharing the fraud loss discovery with Movant was cured by the extensive plea colloquy.

Movant also cannot demonstrate that he suffered prejudice by pleading guilty to the charge as contained in an information rather than following an indictment. Once again, even if for the sake of argument Attorney #1's advice to Movant regarding his Waiver of Indictment was

---

[3]Although Movant asserts without support that Attorney #1 refused to share the discovery materials with him despite his repeated requests, Movant's Reply does not address Attorney #1's statement that she set up several appointments to discuss the discovery materials and that he did not attend "at least one" of those meetings. This record indicates that Movant was at least partly responsible for any alleged lack of knowledge regarding the loss computation.

9

deficient, any deficiency was cured by the plea agreement and the extensive plea colloquy. *See United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) ("[A]ny possible error in plea counsel's advice to Fazio was cured by the plea agreement and at the plea colloquy."). In sum, Movant's argument regarding Attorney #1's failure to inform him about the approximate nature of loss calculation does not satisfy either prong of the *Strickland* standard.

Additionally, to the extent Movant may be arguing that, had he not waived indictment,[4] he would have proceeded to trial in order to put the Government to its full burden of proof, the argument is unavailing. Movant's conviction rested on the facts described in detail during the plea colloquy. Movant does not challenge the validity of his conviction, only the severity of his sentence. Movant's disappointment over the terms of his sentence does not constitute *Strickland* prejudice. *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) ("an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.").

Accordingly, the Court will deny Claim Three.

**D. Claim Four: Attorneys #1 and #2 Failed to Challenge Loss Amount**

In Claim Four, Movant contends that Attorneys #1 and #2 provided ineffective assistance by failing to challenge the Government's fraud loss calculation as stipulated in the plea agreement ($1,500,000 - $3,000,000) because he could have proven that DSU's loss was under $1 million and "that the number of students he actually assisted in the scheme … was … far less than the 254 students forming the basis of the loss stipulation." (D.I. 62 at 1) The record belies this contention. During a tape-recorded meeting with the FBI that took place in 2017 (D.I. 61-2 at 2), Movant stated that the number of student beneficiaries was at least 500, which would have

---

[4] The argument seems counterfactual. "I would note that since my appointment to [Mr. Williams] of over a year ago, he always intended to plead guilty." (D.I. 21 at 23).

yielded a fraud loss of at least $4 million.[5]  In addition, during the plea colloquy, while Movant explained that he was not the leader of the criminal activity, Movant did not challenge the Court's summary of the Prosecutor's proffer putting the number of students at about 300 and the fraud loss at about $3,000,000, which would have yielded a fraud loss of at least $2,400,00 million.  (*See* D.I. 21 at 23-24)

      Movant attempts to support his argument that the Government overstated the loss by presenting DSU's generalized Financial Statements from June 2012 through June 2016. (*See* D.I. 62-1; D.I. 62-2)  However, the following sequence of events demonstrates that the loss amounts resulting from Movant's residency scheme would not have been reflected in DSU's Financial Statements covering the period from 2012-2016.  FBI Special Agent Bole knocked on Movant's door in May 2017, which marked the beginning of the investigation into Movant's participation in the residency scheme.  (*See* D.I. 27 at 6; D.I. 29 at 37)  Movant received a target letter from the United States Attorney's Office "in or around July 2017," after which Attorney #1 was appointed to represent Movant.  (D.I 61-2 at 2)  Attorney #1 met with the Government and Special Agent Bole in October 2017 and, thereafter, routinely checked in with the Government until it decided to proceed with the case in October 2018.  (*Id*.)  Thus, the loss calculated by DSU's independent auditor and/or the Government would not have been completed when the 2012-2016 Financial Statements were drafted.

      Additionally, the Financial Statements do not address or dispute Movant's own assertion that there were 300-500 student beneficiaries of his scheme, nor do they address or dispute the number of student beneficiaries – 254 – used as the basis for the stipulated loss amount.  Given

---

[5] Five hundred students multiplied by $8,000 for one year of tuition would have exceeded $4 million in loss.

11

these circumstances, the Court cannot conclude that Attorneys #1 and #2 performed deficiently by not challenging the stipulated loss figure.

Movant also cannot demonstrate prejudice under *Strickland*. Although DSU reached a "well-supported loss calculation[] of at least $6 million (and potentially over $13 million)," the Government "used a more conservative sampling methodology, cross-checked by FBI field-work, to reach the $3.2 million loss figure." (D.I. 61 at 17) In other words, the stipulated loss calculation also worked as a ceiling and helped to limit Movant's sentencing guideline range. Accordingly, the Court will deny Claim Four for failing to satisfy either prong of *Strickland*.

### E. Claim Five: Attorney #2's Failure to Appeal

In his final Claim, Movant implicitly asserts that Attorney #2 provided ineffective assistance by failing to appeal the loss amount, restitution, and number of students. (D.I. 34 at 5) This argument is unavailing. First, Movant does not allege that he asked Attorney #2 to file a notice of appeal on his behalf, or that Attorney #2 refused to file an appeal; rather, he only asserts that he "tried to reach out to [Attorney #2] not to impugn his integrity, but to find out why he never appealed, challenged, or opposed the loss amount." (D.I. 34 at 5) Second, according to Attorney #2's responsive affidavit, Movant informed Attorney #2 that "he did not want to file an appeal," and Movant did not ask Attorney #2 to file an appeal at any point during the appeal period. (D.I. 61-1 at 3) And finally, the record supports a conclusion that Movant was not interested in appealing his sentence. For instance, during the plea colloquy, the Court informed Movant of his appeal rights and explained the terms of the appellate waiver[6] in Movant's plea

---

[6]Movant's Plea Agreement contains the following waiver of appellate and collateral rights:

> [Movant] knows that he has, and voluntarily and expressly waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing – including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. §

12

agreement. Movant stated that he understood both his appeal rights and what he was waiving, indicating that he knowingly and voluntarily entered into the appellate rights waiver. (D.I. 21 at 15-16) The Court also advised Movant of his right to appeal during the sentencing hearing. (D.I. 29 at 53) And yet, as just discussed, Movant did not ask Attorney #2 to file an appeal. Given these circumstances, the Court concludes Movant has failed to demonstrate that Attorney #2's failure to file an appeal amounted to constitutionally ineffective assistance. Accordingly, the Court will deny Claim Five.

## III.   EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that Movant is not entitled to relief under § 2255. Therefore, the Court concludes an evidentiary hearing is not warranted.

---

1291, or a motion under 28 U.S.C. § 2255. Notwithstanding the foregoing, [Movant] reserves his right (1) to file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel; and (2) to appeal his sentence if: (a) the government appeals from the sentence, (b) [Movant's] sentence exceeds the statutory maximum for the offense set forth in the United States Code, or (c) the sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines.

(D.I. 6 at 5-6, ¶ 13)

IV.     **CERTIFICATE OF APPEALABILITY**

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 Motion after determining that his ineffective assistance of counsel Claims lack merit.  The Court is persuaded that reasonable jurists would not find this assessment debatable.  Therefore, the Court will not issue a certificate of appealability.

V.      **CONCLUSION**

The Court concludes that Movant is not entitled to relief pursuant to 28 U.S.C. § 2255.  An appropriate Order will issue.